IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:20-CR-473 |
| Plaintiff, | |
| -vs- | |
| | JUDGE PAMELA A. BARKER |
| RICHARD WOODARD, | |
| Defendant. | MEMORANDUM OPINION & ORDER |

This matter is before the Court upon Defendant Richard Woodard's ("Defendant") Motion to Suppress and for a Hearing Pursuant to *Franks v. Delaware* filed on February 4, 2024 ("Defendant's Motion"). (Doc. No. 83.) On February 13, 2024, the United States of America filed the Government's Response in Opposition to Defendant's Motion ("the Government's Response"). (Doc. No. 85.) Although given until February 20, 2024 to file a Reply in support of Defendant's Motion, Defendant did not do so. Accordingly, Defendant's Motion is ripe for a decision.

I. **Background**

On August 10, 2020, a Criminal Complaint was filed alleging that Defendant had committed the offense of Distribution and Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 1.) Attached to the Complaint was an Affidavit containing facts upon which the Complaint was based and sworn to by Ryan Allen, Task Force Officer ("TFO") of the FBI, assigned to the Northern Ohio Law Enforcement Task Force ("NOLETF") ("TFO Allen"). (Doc. No. 1-1.)

In relevant part, the Affidavit includes the following sworn statements by TFO Allen. On Thursday, August 7, 2020, members of the Cleveland Police Department (CPD) and the NOLETF were investigating a heroin overdose death that had occurred on July 28, 2020. (Doc. No. 1-1, PageID # 4.) Investigators suspected that Defendant had supplied the heroin that had caused the victim's death. (*Id.*) Investigators reviewed the victim's cellular telephone and identified communications arranging the drug transaction that had occurred just prior to the victim's death, and they identified a contact listed as "RJ" using a telephone number ending in -6934 as the likely supplier. (*Id.*, PageID #s 4-5; Doc. No. 85-1, PageID # 428.) Investigators learned during their investigation that Defendant resided at 2201 West. 93rd Street, Unit # 154, Cleveland, Ohio. On August 6, 2020, they began conducting surveillance of that premises. (Doc. No. 1-1, ¶ 8, PageID # 5; Doc. No. 85-1, PageID # 428.)

On August 7, 2020, investigators saw Defendant come out of his apartment at 2201 West 93rd Street and get into a black Chevy Malibu with a temporary license plate K450162, which was registered to Defendant. (Doc. No. 1-1, PageID # 5.) Investigators followed Defendant to locations where he met with other individuals and drove away after a short interaction. (*Id.*) TFO Allen knew this behavior to be consistent with drug activity. (*Id.*) During one such interaction, investigators saw Defendant conduct a hand-to-hand transaction through the vehicle window with an individual. (*Id.*) Investigators later stopped the individual, and he admitted to purchasing heroin from "RJ", who the investigators knew to be Defendant. (*Id.*) This individual indicated that they contacted "RJ" at a telephone number known to investigators to be used and possessed by Defendant to arrange the transaction. (*Id.*) The cellular telephone that this individual identified was later found in Defendant's Mercedes SUV during his arrest. (*Id.*)

2

Investigators followed Defendant back to his residence at 2201 West 93rd Street and maintained surveillance on him. (*Id.*) A short time later, Defendant left his residence driving a 2010 Mercedes SUV bearing Ohio registration JAK5580. (*Id.*) The license plate JAK5580 is registered to Defendant. (*Id.*) Investigators followed Defendant to a tire shop on Lorain Avenue in Cleveland where they observed him briefly pull into a garage there and meet with an unknown white male. (*Id.*) Less than five minutes later, investigators saw the white male walking out of the garage while talking to Defendant through his car window as Defendant backed out. They then saw Defendant immediately leave the area, all of which was "consistent with [Defendant] having just conducted a drug transaction." (*Id.*)

Investigators next followed Defendant to a Shell Gas Station at 2625 East 55th Street in Cleveland. (*Id.*) They saw Defendant exit the SUV and enter the gas station, leaving the Mercedes SUV running and unoccupied in the parking lot. (*Id.*) When Defendant exited the gas station a few minutes later, officers arrested him for the heroin transaction that had occurred earlier that day. (Doc. No. 85-1, PageID # 429, at ¶ 9, Doc. No. 1-1, PageID # 6.) Defendant initially denied any connection to the Mercedes SUV he drove to the gas station and left running. (Doc. No. 1-1, PageID # 6.) Agents opened the Mercedes' unlocked door to shut it off pending impound and observed plastic bags containing suspected heroin and a digital scale in plain view in the door pocket along with two cellular phones on the center console. (*Id.*) Defendant was placed under arrest and advised of his Miranda rights, and then was conveyed to the Narcotics Office for further investigation. (*Id.*, Doc. No. 85-1, PageID # 429.) Detective John Graves with the CPD called the cellular telephone number 216-312-6934, and one of the phones that was found on the center console of the Mercedes SUV rang. (Doc. No. 85-1, PageID # 429.)

Defendant was again advised of his rights, which he stated he understood, and admitted to selling heroin, living at 2201 West 93rd Street, Unit # 154 for 3 years, and having approximately 30 grams of heroin inside his apartment bedroom in plain view with three firearms.  (Doc. No. 1-1, PageID # 6, Doc. No. 85-1, PageID # 429.)  Defendant stated that his 12-year-old son was in the apartment alone and that his girlfriend who lives with him had nothing to do with the drugs or guns inside.  (Doc. No. 85-1, PageID # 429.)  Detective Graves contacted Assistant Cuyahoga County Prosecutor Forchione who advised him to make entry into the apartment and secure it (but not search it) due to the exigent circumstances of the child being inside the apartment with drugs and guns in plain view.  (*Id.*, at ¶ 12.)  When officers entered the apartment, they saw Defendant's child playing video games with a rifle located very close by and other firearms and drugs in plain view.  (*Id.*, at ¶ 13.

In the Government's Response, it asserts that "[o]fficers secured the apartment, did not search the apartment, and waited for a search warrant."  (Doc. No. 85, PageID # 413.)  However, the Government does not cite to the Allen Affidavit (Doc. No. 1-1), or the Grimes Affidavit to support this assertion.  (Doc. No. 85-1.)  Indeed, the Court could not find any support for this assertion in either affidavit.

Cuyahoga County Court Judge David Matia did authorize a search warrant for Defendant's apartment and both of his vehicles: the Mercedes and the Chevy Malibu.  (Doc. No. 85-1.)  Officers executed the search warrant on August 7, 2020.  (Doc. No. 1-1, PageID # 6.)  In Defendant's apartment, officers found 60 grams of heroin, a 9mm Smith and Wesson M&P Shield pistol, a Browning Hi-Power 9mm pistol, and two Mossberg .22lr caliber rifles, approximately $12,000 in U.S. currency, several boxes of ammunition, and multiple items commonly used to process and

package illegal narcotics. (*Id.*) Defendant admitted that all of the items found in the apartment were his. (*Id.*) Officers recovered bags of heroin and a digital scale from Defendant's Mercedes SUV, but they did not recover any evidence from the Chevy Malibu. (*Id.*, PageID # 7.)

In Defendant's Motion, Defendant seeks suppression of all evidence obtained by law enforcement on the grounds that: 1.) the police made a warrantless entry into Defendant's apartment; 2.) the search warrant was not supported by probable cause and contains false statements; and 3.) Defendant was not Mirandized prior to making any purported incriminating statements. This Memorandum and Opinion and Order will only address Defendant's argument that the Affidavit in support of the search warrant contains false statements and Defendant's request for a *Franks* hearing. The other arguments set forth in Defendant's Motion, i.e., that police made a warrantless entry, the Affidavit in support of the search warrant does not establish probable cause, and the good faith exception does not apply; that there was nothing to connect drug activity and Defendant's residence; and that Defendant was not Mirandized, will be evaluated and decided by this Court after a hearing regarding same.

"Defendant unequivocally asserts that he never told law enforcement officers that he had engaged in any illegal drug-related activity, and that there is no video or other contemporaneous evidence that this purported admission ever took place because it did not occur." (Doc. No. 83, PageID # 403.) Defendant argues that "[w]ithout the false statements in the search warrant affidavit, there is nothing connecting Defendant's apartment to the drug activity that police believed he was engaged in elsewhere." (*Id.*) Defendant requests an evidentiary hearing "in order to address the issue of false statements in the search warrant affidavit." (*Id.*)

In response, the Government asserts that Defendant has not made a *prima facie* showing that the affidavit contains any false statements and, therefore, he is not entitled to a *Franks* hearing.

## II. Law and Analysis

In *Franks v. Delaware*, the Supreme Court explained in relevant part as follows:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course another issue.

*Franks v. Delaware*, 438 U.S. 154, 171-72.

A defendant is entitled to an evidentiary hearing on the truthfulness of the affidavit "if and only if" the defendant can first present a "substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false." *United States v. Campbell*, 878 F.2d 170, 171 (6th Cir. 1989); *United States v. Moncivais*, 401 F.3d 751, 757 (6th Cir. 2005). "Only after the defendant makes this showing may the court consider the veracity of the statements in the affidavit…. Without this substantial showing, courts may not make a *Franks* ruling regarding the veracity of statements made in an affidavit." *United States v. Archibald*, 685 F.3d 553, 558-59 (6th Cir. 2012).

In Defendant's Motion, Defendant states only that "he never told law enforcement officers that he had engaged in any illegal drug-related activity," and that "[t]here is no video or other

6

contemporaneous evidence that this purported admission ever took place because it did not occur." (Doc. No. 83, PageID # 403.)  Defendant's Motion fails to rebut the veracity of any statement in the Affidavit, to include the statements that Defendant made about his apartment, specifically that he had heroin and three firearms in it, and that his son was home alone.  And, as the Government points out, what investigators found upon entry into the apartment, i.e., his son playing video games there, and a rifle and drugs in plain view, is consistent with what Affiant Graves averred in his Affidavit that Defendant told him.  More importantly, Defendant does not provide any "offer of proof", whether affidavits or sworn or otherwise reliable statements of witnesses, to support his claim, and he has not satisfactorily explained their absence, as required for a *Franks* hearing.

Accordingly, that portion of Defendant's Motion requesting a *Franks* hearing is DENIED.  A hearing on those portions of Defendant's Motion seeking to suppress evidence seized from Defendant's apartment is set for April 3, 2024 at 9:00 a.m..

**IT IS SO ORDERED.**

Date:  March 6, 2023

 s/Pamela A. Barker
PAMELA A. BARKER
U. S. DISTRICT JUDGE